IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

PATRICIA ARUDA,

    Petitioner,

 vs.

UNITED STATES OF AMERICA,

    Respondent.

CR. NO. 14-00577 DKW
CV. NO. 16-00642 DKW-KSC

**ORDER (1) DENYING IN PART
MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR
CORRECT SENTENCE; AND
(2) DIRECTING GOVERNMENT
TO FILE RESPONSE**

## <u>INTRODUCTION</u>

  Petitioner Patricia Aruda pled guilty to, and was sentenced to 130 months

imprisonment for, violating 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).[1]  Relying on 28

U.S.C. § 2255, Aruda now seeks to vacate her sentence based on the alleged

ineffective assistance of counsel.  Aruda asserts that counsel was constitutionally

deficient by failing: (1) to file a direct appeal; (2) to properly advise her regarding

cooperation and acceptance of a guilty plea without the benefit of a plea agreement

or proffer letter; (3) to properly advocate for and ensure the Government would file

a promised motion for downward departure for substantial assistance, pursuant to

---

[1]More specifically, Aruda pled guilty to knowingly and intentionally possessing with the intent
to distribute 500 grams or more of a mixture or substance containing a detectable amount of
methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance.

United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1; and (4) to advocate for downward departure based upon U.S.S.G. § 5H1.6 (family ties and responsibilities).

After careful consideration of Aruda's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence ("Section 2255 Motion"), the record, and the relevant legal authority, the Section 2255 Motion is DENIED as to grounds two, three and four. As to the first ground, the Court directs the United States to inform the Court by June 2, 2017 whether it requests an evidentiary hearing or elects instead to permit an appeal. *See Roe v. Flores–Ortega*, 528 U.S. 470, 477 (2000); *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1198 (9th Cir. 2005).

## BACKGROUND

### I.    Indictment, Cooperation, And Guilty Plea

Aruda was arrested on May 21, 2014 following a controlled-buy involving undercover officers of the Drug Enforcement Administration ("DEA") Task Force. Upon the advice of her attorney at the time, Michael Jay Green, Esq., Aruda agreed to cooperate with the Government shortly after her arrest. *See* Declaration of Michael Jay Green ¶¶ 17-24, attached as Ex. C to Mem. In Opp'n, Dkt. No. 136-3. At their first meeting after her arrest, Green explained to Aruda how cooperation could affect her sentence, how he could obtain a "proffer letter" from the Government, and the possibility of a downward departure request from the

Government if her assistance amounted to substantial cooperation. Green Decl. ¶¶ 17-18, 21. Green advised the investigating agents that Aruda was willing to cooperate and that she was certain that she could successfully engage in drug-related conversations over the phone with her sources of supply in California. Green Decl. ¶¶ 24-26.

Aruda was indicted by a grand jury on June 5, 2014 and charged with a single count of knowingly and intentionally possessing with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *See* Indictment, Dkt. No. 11.

When Aruda, Green, and DEA Task Force agents met on June 9, 2014, Green read the text of a proffer letter to Aruda. Green Decl. ¶ 27; *see also* Green Decl., Ex. 2 (Unsigned 5/23/14 Proffer Letter); Ex. 3 (6/12/14 DEA Report of Investigation). Green also explained to Aruda that there were no promises made regarding the filing of a sentencing reduction motion based upon her cooperation—that decision would be made solely by the Government—and asked the agents to clarify or correct his explanation of the proffer letter to Aruda. Green Decl. ¶ 31.

Aruda thereafter met with the case agents on several occasions in order to facilitate drug transactions with her sources, but no arrests or convictions resulted

from her cooperation.  *See* Green Decl. ¶¶ 36-44; Ex. 4 (3/18/15 DEA Report of

Investigation).

Without a plea agreement, Aruda pled guilty to the single-count Indictment

on April 29, 2015.  Dkt. No. 61 (4/29/15 Court Minutes); 4/29/15 Tr.[2]  At the

hearing, Aruda acknowledged that she was knowingly and voluntarily pleading

guilty without a plea agreement, that she had enough time to discuss her decision

to do so with her attorney, and that she was satisfied with Green's representation

up to that point.  4/29/15 Tr. at 9, 23.  She also affirmed that no one had made any

promises or assurances in order to induce her to plead guilty.  4/29/15 Tr. at 10.

Aruda's bail pending sentencing was revoked on August 7, 2015.  Dkt. No.

79 (8/7/15 Court Minutes); Dkt. No. 81 (8/7/15 Petition On Conditions Of Pretrial

Release).  Myles S. Breiner, Esq. replaced Green as Aruda's attorney on

September 1, 2015.  *See* Dkt. No. 86 (8/31/15 Court Minutes); Dkt. No. 88 (9/1/15

Breiner Notice of Appearance).

## II.   <u>Sentencing</u>

On December 7, 2015, as part of her sentencing hearing, the Court heard

arguments on Aruda's sealed Motion To Compel The Government To File A

Motion For Downward Departure Pursuant To U.S.S.G. § 5K1.1 ("5K1.1

---

[2]The April 29, 2015 Change of Plea hearing transcript is attached as Exhibit B to the
Government's Memorandum in Opposition.  Dkt. No. 136-2.

Motion"), *see* Dkt. No. 117.[3]  The Government opposed Aruda's 5K1.1 Motion,

which sought a sentencing reduction based upon her cooperation.  The Court

denied the 5K1.1 Motion, citing Aruda's acknowledgment that (1) the decision

whether or not to file a 5K1.1 motion rested solely with the Government; (2) no

one had been arrested or charged, much less pled guilty, based on the information

she provided; (3) there was no contention of any constitutionally prohibited factor

bearing on the Government's decisions; and (4) there was no evidence of an

arbitrary or irrational decision on the part of the United States.  12/7/15 Tr. at 19-

20.

After granting the Government's request for a one-level timely plea

adjustment under U.S.S.G. § 3E1.1(b) for acceptance of responsibility, and

considering Aruda's allocution together with counsels' arguments, the Court

sentenced Aruda to 130 months' imprisonment—below the advisory guideline

range of 151 to 188 months (Offense Level 31, Criminal History Category IV).

12/7/15 Tr. at 6, 32; Dkt. No. 122 (12/8/15 Judgment).

Aruda did not appeal.  According to Breiner, she did not instruct him to file

a Notice of Appeal, but they did discuss whether the filing of an appeal "might

jeopardize further consideration under Rule 35(b)(1)."  Declaration of Myles S.

Breiner ¶ 9, attached as Ex. A to Mem. In Opp'n, Dkt. No. 136-1.  For her part,

---

[3]The December 7, 2015 hearing transcript is attached as Exhibit E to the Government's
Memorandum in Opposition.  Dkt. No. 136-5.

Aruda asserts that "after sentencing, [Breiner] never discussed or mentioned an appeal." Declaration of Patricia Aruda ¶ 15.

## III.    <u>Section 2255 Motion</u>

Aruda timely filed her Section 2255 Motion on November 30, 2016. Dkt. No. 124. The motion is based on four alleged errors committed by her counsel:

> <u>First Claimed Error</u>: Sentencing counsel was ineffective for failure to file a direct appeal;
>
> <u>Second Claimed Error</u>: Counsel was ineffective for failure to properly advise on cooperation and advising acceptance of guilty plea without benefit of an agreement or protection by proffer letter;
>
> <u>Third Claimed Error</u>: Counsel was ineffective for failure to properly advocate for and ensure government would file promised § 5K1.1 reduction motion after extensive substantial assistance was provided and assert breach of contract claim;
>
> <u>Fourth Claimed Error</u>: Sentencing counsel was ineffective for failure to argue in mitigation for departure based on USSG § 5H1.6 (Family Ties & Responsibilities).

Mem. In Supp. at 4, Dkt. No. 124.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, "[a] prisoner in custody under sentence of a court established by Act of Congress . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to grant relief if it concludes "that the sentence was imposed in violation of the Constitution or laws of the United States,

or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Id.*

In addition, the Court shall hold an evidentiary hearing on a petitioner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). The standard for holding an evidentiary hearing is whether the petitioner has made specific factual allegations that, if true, state a claim on which relief could be granted. *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). In other words, "[a] hearing must be granted unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Id.*

## DISCUSSION

## I. Grounds Two, Three, And Four: Aruda Fails To Establish That Counsels' Performance Was Ineffective

The Court first addresses Aruda's claims relating to counsels' performance from the time of her arrest through sentencing. Because neither Green nor Breiner provided constitutionally deficient representation during this time frame, the Section 2255 Motion is denied as to grounds two, three, and four.

## A.    Legal Standards For Ineffective Assistance Of Counsel Claims

### 1.    General Standard

To prevail on an ineffective assistance claim, a petitioner must first show that counsel's representation fell below an objective standard of reasonableness. A petitioner must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). In other words, a petitioner must show both that counsel's performance was deficient *and* that the deficiency was prejudicial. *Id*. at 692.

To establish prejudice in the context at issue here, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he [or she] would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. In other words, any deficiency that does not result in prejudice necessarily fails.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices

made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690–91. Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal."). As set forth below, none of Aruda's allegations meets the standard to establish ineffective assistance of counsel as to grounds two, three, and four.

### 2. Negotiations and Plea

"During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (internal citation omitted). Thus, "the *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Cabinatan v. United States*, 2011 WL 255691, at *3 (D. Haw. Jan. 26, 2011) (citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)).

Where a petitioner has pled guilty and is asserting ineffective assistance of counsel, the second *Strickland* requirement (prejudice) focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. "In cases where a defendant complains that ineffective assistance led him

[or her] to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he [or she] would not have pled guilty and would have insisted on going to trial.'" *Missouri v. Frye*, 132 S. Ct. 1399, 1409 (2012) (quoting *Hill*, 474 U.S. at 59).

In determining whether a plea was voluntarily and knowingly made, "[a] defendant's plea colloquy is given great weight." *Sam v. United States*, 2015 WL 9897779, at *6 (D. Ariz. Dec. 2, 2015) (citing *United States v. Boniface*, 601 F.2d 390, 393 (9th Cir. 1979)). *See also Blackledge*, 431 U.S. at 65 ("Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."). A collateral challenge based on allegations that contradict a defendant's sworn statements lacks merit. *See Muth v. Fondren*, 676 F.3d 815, 821-22 (9th Cir. 2012) (collecting cases and rejecting a defendant's challenge to his guilty plea that was contradicted by his sworn statements during the change of plea hearing).

**B.     Ground II: Counsel's Failure To Advise Regarding Cooperation, Pleading Guilty Without A Plea Agreement, Or Proffer Letter__**

The Court first addresses Aruda's contention that Green was ineffective because he "never explained [her] options in pursuing a plea offer or what a proffer session was and its benefits, only that I cooperate with the DEA immediately to get a better sentence." Aruda Decl. ¶ 124. According to Green, "there was no written plea agreement," and he "discussed with her a change of plea and the basis of her plea to the single count indictment." Green Decl. ¶¶ 47-48.

At her Change of Plea hearing on April 29, 2015, Aruda verified that she understood that she was pleading guilty to the charge against her without a plea agreement—

> COURT:     Mr. Green, good afternoon to both you and your client as well.  All right. The defendant, Ms. Aruda, is here to plead guilty to the single count set forth in the June 5, 2014 indictment, and she is prepared to do so without a plea agreement; is that correct?
>
> [GREEN]:     That is correct.
>
> COURT:     Ms. Aruda, before accepting your plea, there are a number of questions that I need to ask you this afternoon to insure that your decisions are both knowing and voluntary.  If at any time you don't understand any of the questions I'm about to ask you, let me know that please, and I'll do my best to clarify them for you; okay?
>
> [ARUDA]:     Okay.

4/29/16 Tr. 2-3.  She also confirmed that she had discussed her decision to enter a

plea of guilty with Green—

> COURT: Have you had enough time to discuss both this case as well as that decision, the decision to plead guilty, with Mr. Green?
>
> [ARUDA]: Yes.
>
> COURT: And are you satisfied with Mr. Green's representation of you thus far in this case?
>
> [ARUDA]: Yes.

4/29/16 Tr. at 9; *see also id.* at 25 (Green's statement to the Court that "[w]hen I

spoke to my client -- there is no plea agreement.").  Aruda's sworn statements to

the Court during her plea colloquy carry a strong presumption of veracity, *see*

*Blackledge*, 431 U.S. at 65, and any present allegations to the contrary lack merit.

*See Muth*, 676 F.3d at 821.

Even assuming the truth of Aruda's current version of events—that Green

either failed to advise her or advised her to plead guilty without the benefit of a

plea agreement—fail at *Strickland*'s second step, as she simply cannot show

prejudice.  For example, Aruda makes no attempt to demonstrate that any plea

agreement was possible, or even how—based on the single count in the Indictment,

the guideline's relevant conduct provision, and her base offense level—a plea

agreement would have resulted in any sentencing benefit to her.  Moreover, she

likely would have lost the right to a direct appeal by entering into a plea

agreement.  *See, e.g., Claxton v. United States*, 2013 WL 1136704, at *7 (D. Haw.

Mar. 18, 2013) ("[I]n the District of Hawaii, the government requires an appeal

waiver in plea agreements.").  Aruda cannot "show a reasonable probability that

the end result of the criminal process would have been more favorable by reason of

a plea to a lesser charge or a sentence of less prison time."  *Frye*, 132 S. Ct. at

1409.  Nor can she demonstrate that she lost a plea opportunity that resulted "in a

conviction on more serious charges or the imposition of a more severe sentence."

*Lafler*, 132 S. Ct. at 1387.  Given that prejudice cannot have resulted here, there is

no possibility that Aruda can be entitled to relief on this claim.[4]

To the extent Aruda argues that Green was ineffective by failing to secure a

proffer letter, that assertion is flatly contradicted by the record.  The Government

did, in fact, provide a proffer letter to Aruda setting forth the terms and conditions

under which she would provide a proffer of information.  *See* Green Decl., Ex. 2;

*see also* Ex 3. (6/12/14 DEA Report of Investigation) (noting that the interview

was conducted "under proffer agreement").  Moreover, Green states that he read

the letter to Aruda on two occasions—once alone and once in the presence of the

case agents.  Green Decl. ¶¶ 30-31.  Green further asserts that he explained to

---

[4]To be clear, Aruda does not assert (and the record contains no evidence) that Green failed to
notify her of a Government offer of a plea agreement with favorable terms.  There was never
such an agreement.  Nor does Aruda claim that counsel rejected such an offer without consulting
her.  Thus, *Frye*—which analyzed a situation where counsel allowed a formal government plea
offer to expire without even allowing the defendant to consider it—is of no help to Aruda.
Likewise, *Lafler* does not apply because Aruda does not claim that counsel improperly advised
her to reject a favorable offer.

Aruda that (1) no promises were made pursuant to the proffer letter and (2) that the decision whether to seek a downward departure was the Government's alone. Green Decl. ¶ 31. The record indicates that Aruda "was told that her cooperation was not tantamount to a sentence reduction." Green Decl. ¶ 32.

At the April 29, 2015 Change of Plea hearing, Aruda affirmed that she was not promised anything in exchange for her cooperation or plea in this matter.

> COURT: Do you understand that if a sentence is imposed that is more severe than what the guidelines call for, or more severe than what you anticipate, you will nonetheless be bound by your plea and will have no right to withdraw it?
>
> [ARUDA]: I understand.
>
> COURT: Do you understand that despite any discussions you may have had with counsel, including counsel for the United States, the Court is not bound by those discussions nor is the Court bound by any recommendations that counsel may wish to provide to the Court with regard to sentencing, and that the sentencing judge could impose a sentence more severe than what you anticipate up to the maximum permitted by law?
>
> [ARUDA]: Okay.
>
> COURT: Has anyone made any promises to you, Ms. Aruda, with regard to what your sentence will be?
>
> [ARUDA]: No.

4/29/15 Tr. at 16. Accordingly, any claim that Green failed to explain the consequences of her cooperation is wholly incredible and without merit. Because

14

Aruda pled guilty after being advised of the ramifications of her plea and affirmed that no person had made any promises to her, she cannot prove prejudice, *i.e.*, that but for Green's failure to explain what a proffer session was and its benefits, and the consequences of her cooperation, including its possible effect on her sentence, she would not have pled guilty and, instead, would have insisted on proceeding to trial.

In short, the record evidences no ineffective advice regarding cooperation, the consequences of a plea, or the significance of a proffer letter, nor is there any evidence that such ineffective advice, even if present, would have been prejudicial. The Section 2255 Motion is therefore denied with respect to ground two.

### C. Ground III: Counsels' Failure To Advocate For And Ensure Government Filing Of A § 5K1.1 Motion

Aruda argues in ground three that Green and Breiner were both ineffective by failing to advocate for and ensure that the Government filed a 5K1.1 motion, and to then assert a breach of contract claim. This argument is off the mark for several reasons. First, Green withdrew and was replaced by Breiner on September 1, 2015—over three months prior to Aruda's sentencing on December 7, 2015. Aruda makes no showing that Green's representation was inadequate with respect to the non-filing of a 5K1.1 motion at her sentencing or that she was otherwise prejudiced by his conduct.

Second, Breiner actually filed a motion to compel the Government to file a

5K1.1 motion. Aruda's 5K1.1 Motion sought a sentencing reduction based upon

her cooperation, which the Court denied. *See* 12/7/15 Tr. at 19-20. Breiner also

argued at the sentencing hearing in favor of a reduced sentence based upon

Aruda's cooperation. *See* 12/7/15 Tr. at 10. That is, he *did* advocate for and

attempt to ensure that the Government would file such a motion—he was simply

unsuccessful in his considerable efforts.

Third, there was no "promised" 5K1.1 reduction motion, despite Aruda's

unadorned assertion to the contrary. *See* Mem. In Opp'n at 8 ("[T]here was no

promise by the government to file a § 5K1.1 reduction motion[.]"); *see also*

4/29/15 Tr. at 16 (Aruda's acknowledgment that she was not promised anything in

exchange for her cooperation or plea of guilty); Breiner Decl. ¶ 8 ("Ms. Aruda was

fully informed by me that the Government might not file a 5K1.1 Motion for

downward departure, and [Ms.] Aruda specifically discussed this possibility with

me."). The Government has a "power, not a duty, to file a motion when a

defendant has substantially assisted," but "a prosecutor's discretion when

exercising that power is subject [only] to constitutional limitations that district

courts can enforce." *Wade v. United States*, 504 U.S. 181, 185 (1992); *see also*

*United States v. Flores*, 559 F.3d 1016, 1019 (9th Cir. 2009) ("Even if a defendant

has provided substantial assistance, we may not grant relief unless the

government's failure to file a § 5K1.1 motion was based on impermissible motives, constituted a breach of a plea agreement, or was not rationally related to a legitimate government purpose.").  As noted above, the Court denied Aruda's 5K1.1 Motion because she failed to make the required showing.  *See* 12/7/15 Tr. at 19 ("The government is in the best position to weigh the significance of what the defendant provided, and the court is obligated to accord that evaluation by the government substantial weight, according to the Sentencing Guidelines at application note 3."); *id.* at 20 ("There is no evident bias of the sort identified by [Aruda] nor is there any contention of a constitutionally prohibited factor entering the government analysis or any evidence of an arbitrary or irrational decision on the part of the United States.").

In any event, the Court *did* take Aruda's cooperation into account at sentencing, even in the absence of a 5K1.1 motion.  Considering the 18 U.S.C. § 3553(a) factors and Aruda's cooperation, the Court imposed a 130-month term of imprisonment.  This was significantly less than the Government's recommendation of 151 months, and cooperation was one of the reasons for that reduction.  At the December 7, 2015 hearing, the Court explained its reasoning as follows—

> COURT: . . . Based on the mitigating factors I've mentioned, based on the amount of methamphetamine in part that we're talking about in this case, based on the at least attempted cooperation that Miss Aruda tried to afford the government, it didn't work, but again it doesn't mean I can't consider and I have considered

your desire to make things right and to convey what information you did have. Maybe it didn't -- it wasn't enough. That's what the government is saying, that's what Mr. Muehleck is saying, and I have no reason to doubt that. But it doesn't mean that you didn't try, and it doesn't mean that you didn't at least attempt. I think it's important for you to know that, it's important for your family and your child -- your children to know that you attempted to make things right.

\*\*\*\*

And again I think you've started along that path by attempting to cooperate with the United States in the way that you detailed in the memorandum that Mr. Breiner filed in your behalf.

12/7/15 Tr. at 30-31.

In light of the uncontested facts establishing that (1) there was no "promised" 5K1.1 motion, (2) Breiner actually filed a motion to compel the Government to file a 5K1.1 motion, (3) Breiner advocated for a sentencing reduction based upon Aruda's cooperation, and (4) the Court expressly factored her cooperation into her sentence, Aruda's claim fails under both *Strickland* prongs. As a result, the Court finds that Aruda's third ground claiming ineffective assistance of counsel fails.

### D. Ground IV: Counsel's Failure To Argue For Departure Under U.S.S.G. § 5H1.6 (Family Ties And Responsibilities)

Aruda asserts in ground four that Breiner was ineffective at sentencing by failing to argue for a departure under U.S.S.G. § 5H1.6 due to her responsibilities

18

to her young child.  Breiner explains the reason for his decision not to present this argument in writing prior to Aruda's sentencing—

> Ms. Aruda and I discussed not making the arguments for consideration of her minor children in writing because there were allegations that she may have transported methamphetamine in her car with the children in it.  Moreover, the minor children were in the custody of the father during the time of incarceration, and we determined strategically it was advantageous not to spotlight this issue.

Breiner Decl. ¶ 13.

That is, Breiner's decision not to argue for reduction pursuant to U.S.S.G. § 5H1.6, after consultation with Aruda, was strategic.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]"  *Strickland*, 466 U.S. at 690; *see also Cheney v. Washington*, 614 F.3d 987, 996 (9th Cir. 2010) ("Under *Strickland*, the court must 'indulge a strong presumption that [counsel acted] for tactical reasons rather than through sheer neglect.'") (citation omitted).  "Because [Breiner's] actions reflect a deliberate choice of reasonable strategy, they do not fall outside reasonable professional norms."  *Miles v. Ryan*, 713 F.3d 477, 491 (9th Cir. 2013).  Aruda fails to establish that his performance was deficient on this claimed point of error.

In any event, the record reflects that Breiner at least raised Aruda's family circumstances at sentencing —

> [BREINER]: The mandatory minimum of 120 months is the position that the defense takes, that is, given that

you can't go below that because no 5K was filed in this matter, and she doesn't qualify for safety valve. Our position is a 10-year sentence is an enormous sentence for her. She has family, children. There are family members here. She has some young children in her family. Her youngest is --

[ARUDA]:     Five.

[BREINER]:   -- five years old. Every day she's in prison, that child's technically in prison also. It's a terrible consequence. It's not the court's fault or anyone else's fault, except Miss Aruda's.

****

Everyone in her family is paying the price for the decisions she made.

****

[150 months] punishes her more than she needs to be punished, and it punishes her family and her children more than is necessary.

12/7/15 Tr. at 23-24.

Moreover, the Court expressly considered her family ties in fashioning her below-guidelines sentence—

COURT:      I do note that the defendant is married. She has young children, including, as she mentioned earlier this morning, a young daughter who is five, who one would hope would serve as motivation for the defendant to stay clean going forward.

****

> And again that dovetails back to what I started
> saying when I discussed the mitigating factors: your
> family, your friends.
>
> ****
>
> I do agree with you, Mr. Breiner, that the
> recommendation adopted by the United States of
> 151 months is too much in this case. . . [b]ased on
> the mitigating factors I've mentioned[.]

12/7/15 Tr. at 28-30.

To be clear, Breiner argued, and the Court took into consideration, mitigating factors when determining Aruda's below-guidelines sentence, including her family circumstances. Aruda's claim therefore fails under both *Strickland* prongs. Aruda has not demonstrated that Breiner's representation was deficient or that there is a reasonable probability that, but for Breiner's allegedly unprofessional errors, the result of the sentencing proceeding would have been different. *Strickland*, 466 U.S. at 687–88. In short, the record demonstrates that Breiner was neither ineffective for failing to specifically argue for a U.S.S.G § 5H1.6 reduction, nor was any deficiency prejudicial. The Section 2255 Motion is denied as to ground four.

### E. No Evidentiary Hearing Is Required On These Grounds

The Court is required to hold an evidentiary hearing on a Section 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). As the

analysis above shows, Aruda's claims with regard to her ineffective assistance of counsel claims on grounds two, three, and four lack merit. The issues raised here can be conclusively decided on the basis of the evidence in the record, and there is no reason to conduct an evidentiary hearing on these enumerated grounds. *See, e.g.*, *United States v. Mejia–Mesa,* 153 F.3d 925, 929 (9th Cir. 1998).

## II.     Ground I: Sentencing Counsel's Failure To File A Direct Appeal

Next, the Court addresses Aruda's claim that Breiner was ineffective by failing to file a notice of appeal. Breiner contends that Aruda did not instruct him to file a notice of appeal, but that they did discuss whether the filing of an appeal "might jeopardize further consideration under Rule 35(b)(1)." Breiner Decl. ¶ 9. Breiner does not detail when or where this discussion took place, but he does cite a September 6, 2015 email that he received from Aruda. *See* Breiner Decl. ¶ 9 (citing Ex. 2 at 3 (9/6/15 email from Aruda to Breiner)).

Aruda, on the other hand, asserts that "after sentencing, [Breiner] never discussed or mentioned an appeal." Aruda Decl. ¶ 15. According to Aruda, Breiner "essentially abandoned her after sentencing without comment or discussion on the matter." Mem. In Supp. at 4; *id.* at 5 ("Here, rather than appeal a clearly preserved and potentially meritorious issue, Aruda's attorney simply failed to

address an appeal at all.").[5]  In this instance, although Breiner denies being

instructed to appeal, he does not address any efforts he took to consult with Aruda

regarding her appeal rights post-sentencing, in the face of her specific claim of

post-conviction abandonment by counsel.

For its part, the Court at sentencing advised Aruda of her appeal rights, as

follows—

> COURT:  Miss Aruda, you have 14 days from the court's entry
> of final judgment in this case in which to take an
> appeal.  That's not a lot of time; so if you are inclined
> or thinking about that possibility, you are urged to
> speak with Mr. Breiner about that at your earliest
> opportunity.  You are entitled to the assistance of
> counsel in taking any appeal, and if you are unable to
> afford one, one will be provided and appointed for
> you at no cost to you by the court.

12/7/15 Tr. at 34.

The Sixth Amendment guarantees the right to effective assistance of counsel

at all critical stages of a criminal proceeding.  *See United States v. Gonzalez*, 113

F.3d 1026, 1029 (9th Cir. 1997).  Where a defendant instructs counsel to pursue an

---

[5]The Court acknowledges that Aruda's submissions are equivocal on the issue of whether and
when she and Breiner discussed the possibility of an appeal.  *Compare* Aruda Decl. ¶ 15
("[A]fter sentencing [Breiner] never discussed or mentioned an appeal.") *with* Mem. In Supp. at
5 (""Even if somehow [Breiner] did not understand that Aruda wished to appeal, he had a duty to
consult her about taking an appeal."); *and id.* at 5 n.2 ("Clearly he understood that Aruda wanted
to appeal as it had already been discussed on at least one prior occasion.") (citing Ex. 1, 9/6/15
Email from Aruda to Breiner).

appeal, and the counsel fails to do so,[6] that representation is *per se* ineffective (even in the face of an appeal waiver). *United States v. Sandoval–Lopez*, 409 F.3d 1193, 1197 (9th Cir. 2005).[7]

A different standard applies where a defendant and counsel do not discuss appellate rights. In *Roe v. Flores–Ortega*, 528 U.S. 470 (2000), the Supreme Court rejected the Ninth Circuit's bright-line rule that failing to file a notice of appeal without the defendant's consent is *per se* deficient under S*trickland*. Instead, the Supreme Court held that where the defendant "neither instructs counsel to file an appeal nor asks that an appeal not be taken," a court must ask whether counsel consulted with the defendant about an appeal, meaning to advise the defendant about the advantages and disadvantages of an appeal and making a "reasonable

---

[6]If Aruda explicitly asked Breiner to file a notice of appeal, he owed her that duty. *Cf. Flores–Ortega*, 528 U.S. at 477 (finding that appointed counsel must file an appeal if requested, regardless of whether the appointment continues through appeal). Further, "filing a notice of appeal is a purely ministerial task and the failure to file reflects inattention to the defendant's wishes." *Id*.

[7]In *Sandoval-Lopez* the defendant entered into a plea agreement largely waiving his right to appeal. 409 F.3d at 1194-95. In a subsequent Section 2255 motion, the defendant claimed that despite a request, his counsel failed to file a notice of appeal. *Id*. at 1195. Although recognizing the rule it announced was "contrary to common sense," *id*. at 1196, the Ninth Circuit held that the failure to file a notice of appeal when instructed to do so, even in the face of an appeal waiver, constitutes ineffective assistance of counsel:

> If, as *Sandoval-Lopez* claims, it is true that he explicitly told his lawyer to appeal his case and his lawyer refused, then we are required by *Flores-Ortega* to conclude that it was deficient performance not to appeal and that *Sandoval-Lopez* was prejudiced. The prejudice in failure to file a notice of appeal cases is that the defendant lost his chance to file the appeal, not that he lost a favorable result that he would have obtained by appeal.

*Id*. at 1197. That is, even assuming an appeal of a sentence would be meritless, "prejudice" necessarily results merely by the failure to file.

effort to discover the defendant's wishes." *Flores–Ortega*, 528 U.S. at 478. If counsel did not consult with the defendant, the court must determine if the failure to consult with the defendant constitutes deficient performance. *Id.* "[C]ounsel has a constitutionally imposed duty to consult with the defendant about an appeal where there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he [or she] was interested in appealing." *Id.* at 480. A "highly relevant" factor is whether the conviction follows a trial or guilty plea, and whether the defendant waived his or her appellate rights. *Id.* If the first *Strickland* prong is met, to show prejudice a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him [or her] about an appeal, he [or she] would have timely appealed." *Id.* at 484.

When confronted with a claim that counsel was ineffective by failing to file a notice of appeal or to consult with the client regarding the filing of an appeal, the United States has the option of not objecting and allowing an appeal to proceed. *Sandoval–Lopez* explains two options available in such a situation:

> The district court can hold an evidentiary hearing to decide whether petitioner's allegation is true, and if it is, vacate and reenter the judgment, allowing the appeal to proceed. Or, if the [Government] does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to

> proceed, assuming without deciding that the petitioner's claim
> is true.

*Sandoval–Lopez*, 409 F.3d at 1199.

The Government does not address the application of *Flores–Ortega* or *Sandoval–Lopez* here. Rather, it simply argues that the "record is very clear that Defendant Aruda did not instruct her counsel, Mr. Breiner, to file an appeal." Mem. In Opp'n at 6. The Court, however, disagrees regarding the state of the record. *See e.g.*, *supra* n.5.

Thus, guided by *Flores–Ortega* and *Sandoval–Lopez*, the Court directs the United States to inform the Court, by **June 2, 2017**, if it (1) seeks an evidentiary hearing as to whether Aruda's allegations are true, or (2) elects not to oppose the Section 2255 Motion solely on this remaining ground, and to instead permit Aruda to appeal. If the United States seeks an evidentiary hearing, the Court will appoint counsel for that limited purpose under Rule 8 of the Rules Governing Section 2255 Proceedings for the U.S. District Courts.

## III.   <u>Certificate of Appealability</u>

In denying portions of her Section 2255 Motion, the Court must address whether Aruda should be granted a Certificate of Appealability ("COA"). *See* R. 11(a), Rules Governing Section 2255 Proceedings. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met only when the applicant shows that

"reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. MacDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted). Based on the above analysis, the Court finds that reasonable jurists could not find the Court's rulings debatable as to grounds two, three, and four. Accordingly, the Court DENIES the issuance of a COA as to these grounds.

## CONCLUSION

For the foregoing reasons, the Court DENIES Aruda's Section 2255 Motion in part, as to grounds two, three, and four. In addition, the Court DENIES a COA as to those grounds.

As to ground one, alleging ineffective assistance of counsel for failure to file an appeal, the United States is DIRECTED to file a Response pursuant to *Flores–Ortega* and *Sandoval–Lopez* by **June 2, 2017**.

//

//

//

Because issues remain with Aruda's Section 2255 Motion, it is premature to enter judgment. The Court will further address ground one upon review of the Government's Response.

IT IS SO ORDERED.

Dated: May 3, 2017 at Honolulu, Hawaiʻi.

Derrick K. Watson
United States District Judge

*Aruda v. United States*; CR. NO. 14-00577 DKW; CV. NO. 16-00642 DKW-KSC;
**ORDER (1) DENYING IN PART MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DIRECTING GOVERNMENT TO FILE RESPONSE**

28