IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 14-cr-00577-DKW |
| Plaintiff, | **SECOND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE** |
| vs. | |
| PATRICIA ARUDA, | |
| Defendant. | |

Before the Court is Defendant Patricia Aruda's motion for compassionate release, remanded for this Court's further consideration in light of *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). Aruda argues that her health conditions, in light of the COVID-19 pandemic, present an extraordinary and compelling reason warranting her immediate release. Based on the updated record before it, the Court disagrees, and, for the reasons articulated below, her motion is again DENIED.

## RELEVANT BACKGROUND

On June 17, 2020, Aruda filed an emergency motion for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (compassionate release motion). Dkt. No. 155. In it, she argues that her medical conditions—obesity, high cholesterol, anxiety, depression, and pre-cancerous skin lesions requiring topical chemotherapy—put her at an increased "risk of serious illness or death should she contract COVID-19." Dkt. No. 155-1 at 1, 3–7. After briefing, *see* Dkt. Nos. 159,

160, the Court denied Aruda's motion on July 17, 2020. Dkt. No. 164. The Court found that, given her obesity and the high number of inmates at Aruda's facility of incarceration then infected with COVID-19, she had presented an extraordinary and compelling reason warranting release. *Id.* at 11–17. However, the Court found that the sentencing factors at 18 U.S.C. Section 3553(a) counseled against her release, as did the continued danger she presented to the community. *Id.* at 17–23.

On April 8, 2021, the Ninth Circuit vacated the Court's decision and remanded for renewed consideration of Aruda's Section 3582 motion. *Aruda*, 993 F.3d at 797. According to the Circuit, this Court erred in holding that the Sentencing Commission's definition of "extraordinary and compelling" reasons warranting a sentence reduction, *see* U.S.S.G. § 1B1.13 n.1, was binding on this Court where, as here, a defendant[1] directly brings a compassionate release motion. *Aruda*, 993 F.3d at 799–802. The Circuit held that where a defendant brings the motion, the Court is not bound by the Commission's definition of extraordinary and compelling, though that definition "may inform [the Court's] discretion" in deciding such a motion. *Id.* at 802.

---

[1] The Commission's definition of "extraordinary and compelling" is still binding on the Court where the Director of the Bureau of Prisons, rather than the defendant, brings the compassionate release motion. *See Aruda*, 993 F.3d at 799-802.

In its remand order, the Circuit instructed the Court "to consider Aruda's new allegation that she has since contracted and recovered from COVID-19." *Id.* Accordingly, the Court requested supplemental briefing. Dkt. Nos. 173, 182. Having now received that briefing, *see* Dkt. Nos. 174, 175, 183, this order follows.

## LEGAL STANDARD

"'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (alterations in original) (quoting 18 U.S.C. § 3582(b)). Such circumstances must be "expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." *See* 18 U.S.C. § 3582(c)(1)(B); *see also Dillon*, 560 U.S. at 827, 831; *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).

Congress carved out one such circumstance in 18 U.S.C. § 3582(c)(1)(A)(i). A court may "modify a term of imprisonment" upon an inmate's motion if:

1. the inmate exhausted "all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" on her behalf or 30 days has lapsed since the relevant warden received a request to do so;

2. the inmate has established that "extraordinary and compelling reasons warrant such a reduction"; and

3. the court considers the sentencing factors set forth in 18 U.S.C. §3553(a).

18 U.S.C. § 3582(c)(1)(A)(i). The inmate bears the burden of establishing the requirements for a sentence reduction by a preponderance. *See, e.g.*, *United States*

3

*v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998); *see also Walton v. Arizona*, 497 U.S. 639, 650 (1990) (a defendant's due process rights "are not violated by placing on him the burden of proving mitigating circumstances sufficiently substantial to call for leniency"), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002).

## DISCUSSION

Aruda argues that her medical conditions—obesity, heart and respiratory complications from COVID-19, risk of diabetes, hyperlipidemia, "unspecified hip and knee pain," limited mobility, and uterine and vaginal bleeding—continue to place her at risk of a severe reaction to COVID-19. Dkt. No. 174 at 2–6. She also appears to argue that these worsening health conditions themselves warrant a sentence reduction. Dkt. No. 183 at 6 ("The BOP's inability to effectively manage Aruda's health care . . . also justifies release."). The Government disagrees, arguing compassionate release is not warranted because Aruda is fully vaccinated against COVID-19—as are roughly 70 percent of the inmates in Aruda's facility—she did not have a severe reaction when she was previously infected, and she is receiving appropriate medical care for her chronic and acute medical issues. Dkt. No. 175 at 1–4. For the reasons articulated below, the Court finds that Aruda has failed to present an extraordinary and compelling reason warranting compassionate release.

Section 3582(c)(1)(A)(i) permits a sentence reduction only upon a showing of "extraordinary and compelling reasons." While Congress has not defined "extraordinary and compelling reasons" warranting compassionate release, the Sentencing Commission has. *See* U.S.S.G. § 1B1.13. As discussed above, that definition is binding only as to compassionate release motions brought by the Director of the Bureau of Prisons, not where, as here, such motions are brought directly by a defendant. *Aruda*, 993 F.3d at 797. Yet, while the Sentencing Commission's definition is not *binding* in the circumstance presented here, it nonetheless "may inform a district court's discretion for [Section] 3582(c)(1)(A) motions filed by a defendant." *Id.* at 802. The Court only recently described the circumstances when its discretion may be exercised in favor of a Section 3582 movant:

> [W]here an inmate is seeking compassionate release due to a potential reaction to a communicable disease, such as COVID-19, [the inmate] must usually demonstrate that the potential to be infected is high, [the inmate] is at risk of a severe reaction if infected, and should [the inmate] become infected, [he or she] will suffer significant short- or long-term harm or death. Because the remedy sought—years off a sentence for a felony conviction—is extraordinary, the circumstances warranting that remedy must be likewise extraordinary (and compelling).[2]

---

[2] Aruda argues this standard does not reflect a "totality of the circumstances" approach to deciding her motion. Dkt. No. 174 at 9 n.14; *see also* Dkt. No. 183 at 4 n. 4. The Court does not see why. The Court has considered the totality of the circumstances—that is, all relevant medical and other data and information presented by both sides—in determining the *actual* risk COVID-19 poses to Aruda and whether that risk rises to the level of an extraordinary and compelling reason warranting her immediate release. Were Aruda's motion brought on different grounds, of course, the "totality of the circumstances" may include different or additional

5

*United States v. Blumenstein*, 2021 WL 1655823, at \*4 (D. Haw. April 27, 2021); *accord United States v. Kauwe*, 467 F. Supp. 3d 940, 946 (D. Nev. 2020) (considering whether: "(1) the combination of [the defendant's] age and underlying health conditions elevate his risk of becoming seriously ill were he to contract COVID-19 . . . and (2) he faces greater risk from COVID-19 if he continues to be housed at his current facility instead of being released").

The Court recognizes that Aruda still suffers from obesity, *see* Dkt. No. 274-2 at 1, which is recognized by the CDC as placing her at an increased risk of a severe reaction should she contract COVID-19.[3] Likewise, the Court recognizes that, while Aruda may not have had a severe reaction to COVID-19 when she was infected in 2020, *see* Dkt. No. 174-2 at 234, she may be suffering from what is called "long COVID," a condition whereby a person suffers lingering symptoms from a prior bout of COVID-19.[4] But these facts are far outweighed by several others. Most significantly, Aruda has been fully vaccinated against the virus,

---

information. But Aruda does not articulate what "circumstances" the Court has failed to consider in the "totality" approach she urges, at least insofar as *the grounds upon which her motion was brought* is concerned.

[3]*People at Increased Risk: People with Certain Medical Conditions*, CDC (last updated May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 8, 2021).

[4]*Post-COVID Conditions*, CDC, (last updated Apr. 8, 2021), https://www.cdc.gov/coronavirus/2019-ncov/long-term-effects.html (last visited June 8, 2021). Following her COVID-19 infection, Aruda appears to have suffered chest pains and shortness of breath, two symptoms identified by the CDC as occurring in patients suffering from long COVID. Dkt. No. 174 at 2–3 (cataloguing such incidents).

receiving two doses of the Pfizer-BioNtech vaccine. *Id.* at 276. She is not alone. BOP reports that over 1000 of the roughly 1400 inmates at FMC Carswell, where Aruda is housed, are vaccinated against the virus.[5] Whether due to this vaccination effort or otherwise, COVID-19 infections at Aruda's facility are virtually nonexistent. As of this order, BOP reports just three inmates and zero staff as currently infected.[6] This is a drastic reduction of cases from when the Court initially decided Aruda's motion; at that time, there were 190 inmates and three staff infected. Dkt. No. 164 at 15.

Given the infection and vaccination rates at Aruda's facility, her chances of being among those rarely reinfected[7] with COVID-19 are *extremely low*.[8] And now that she has been vaccinated, even accounting for her obesity and other ailments, her chances of having a severe reaction to the virus is likewise *extremely low*.[9] In short, in considering Aruda's health conditions alone or in light of the

---

[5]*COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited June 8, 2021).
[6] *COVID-19 Coronavirus: COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/ (last visited June 8, 2021).
[7]*Reinfection with COVID-19*, CDC, (last updated Oct. 27, 2020), https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited June 8, 2021).
[8]*Pfizer-BioNTech COVID-19 Vaccine Emergency Use Authorization Review Memorandum*, FDA, https://www.fda.gov/media/144416/download (last visited June 8, 2021) (explaining that the vaccine was 95% effective in preventing COVID-19).
[9]A test conducted by Pfizer and BioNTech found that the vaccine was 100% effective in preventing severe disease as defined by the U.S. Centers for Disease Control and Prevention and 95.3% effective in preventing severe disease as defined by the U.S. Food and Drug Administration. *Pfizer and BioNTech Confirm High Efficacy and No Serious Safety Concerns Through Up to Six Months Following Second Dose in Updated Topline Analysis of Landmark*

COVID-19 pandemic, she has failed to present an extraordinary and compelling reason warranting the compassionate release she seeks.

Considering the circumstances presented, together with the Section 3553(a) sentencing factors, the outcome is no different.  *See* Dkt. No. 155-1 at 12–15; Dkt. No. 183 at 7–10.  It is commendable that Aruda has engaged in rehabilitative prison programming.  *See* Dkt. No. 155-1 at 12–14; Dkt. No. 183 at 8–9.  And the Court acknowledges that Aruda currently suffers from health complications not present at sentencing.  Dkt. No. 183 at 9.  However, given her current health conditions, the care she is receiving at FMC Carswell, a medical facility, and the extremely low risk presented to her from COVID-19, as described above, the Court finds she is not entitled to relief.

//

//

//

//

//

//

---

*COVID-19 Vaccine Study*, Pfizer (last updated April 1, 2021), https://www.pfizer.com/news/press-release/press-release-detail/pfizer-and-biontech-confirm-high-efficacy-and-no-serious  (last visited June 8, 2021).

## **CONCLUSION**

For the reasons set forth herein, Aruda's motion for compassionate release, Dkt. No. 155, is DENIED.

IT IS SO ORDERED.

DATED: June 8, 2021 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*United States v. Aruda*, Criminal No. 14-00577-DKW; **SECOND ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE.**